UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID LOPEZ,

     Applicant,

v.                          CASE NO. 8:23-cv-1225-SDM-AAS

SECRETARY, Department of Corrections,

     Respondent.

_____/

## **ORDER**

Lopez applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his conviction for sexual battery under specified circumstances, for which he was sentenced to twelve years' imprisonment. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 8-2) Lopez raises eight grounds for relief, each of which is meritless.

## I. **BACKGROUND**[1]

On the evening of September 27, 2014, Lopez raped his wife's "best friend." (Respondent's Exhibit 6 at 270) The victim had planned to spend the weekend at the Lopez residence. When she arrived, the victim ate dinner with the Lopezes and shared a six-pack of hard cider with M.D., Lopez's wife. The victim and M.D. each had three drinks. Lopez had "at least" twelve beers. (Respondent's Exhibit 6 at 345)

---

[1] This summary of the facts derives from the trial transcript. (Respondent's Exhibit 6)

Around 11:00 p.m., the victim and M.D. went to the master bedroom and got in bed.  The last thing they remembered before passing out was "talking and joking around and giggling."  (Respondent's Exhibit 6 at 208, 258)  The victim woke on her stomach.  She felt "something . . . on top" of her and passed out again. (Respondent's Exhibit 6 at 208)  When she woke a second time, the victim was on her back.  She felt pain in her vagina and anus, smelled cigarette smoke, and saw Lopez on top of her.  The victim told Lopez to get off and tried to wake M.D. without success.  As she exited the house, the victim saw Lopez in the garage.  She said "something along the lines of he knew what he did and he better go tell his wife."  (Respondent's Exhibit 6 at 214)

The victim drove to a hospital and underwent a rape-kit examination.  During the examination, the nurse collected sperm from the victim's vagina and anus.  DNA analysis revealed that the sperm came from Lopez.  Also, the nurse observed that the victim's vagina and anus were "very red, puffy, [and] tender."  (Respondent's Exhibit 6 at 296)  Lastly, the nurse collected a urine sample from the victim.  The sample contained diphenhydramine, the active ingredient in Benadryl. Diphenhydramine can cause "drowsiness" and "loss of coordination." (Respondent's Exhibit 6 at 435)  Alcohol can "increase[ ]" these side effects. (Respondent's Exhibit 6 at 438)  The victim had not taken any medications that day. She later testified that Benadryl caused her to feel "fuzzy minded."  (Respondent's Exhibit 6 at 204)

Soon after the victim left the Lopez residence, Lopez called 911. He told the operator, "Evidently, I'm a rapist. So please send a sheriff directly." (Respondent's Exhibit 6 at 269) He later said, "I danced with a girl and, evidently, it was rape." (Respondent's Exhibit 6 at 269) During an interview with law enforcement, Lopez claimed that he digitally penetrated the victim's vagina and performed oral sex on her. He described the encounter as "consensual." (Respondent's Exhibit 6 at 365)

Lopez was charged with sexual battery under specified circumstances. The prosecution alleged that he raped the victim after giving her "an intoxicating substance which mentally or physically incapacitated" her. (Respondent's Exhibit 5) At trial, Lopez argued that the case "boil[ed] down to two things, consensual sex and regrets." (Respondent's Exhibit 6 at 538) The jury found Lopez guilty as charged, and the trial court sentenced him to twelve years' imprisonment. (Respondent's Exhibit 9) The appellate court affirmed the conviction without a written opinion. (Respondent's Exhibit 16) Lopez unsuccessfully moved for post-conviction relief under Florida Rule of Criminal Procedure 3.850 and Florida Rule of Appellate Procedure 9.141(b). (Respondent's Exhibits 21, 22, 28, 32) This federal habeas application followed. (Docs. 1, 2)

## II. STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable[;] . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question . . . ."); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to

second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766,
779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult
to meet,' . . . and 'highly deferential standard for evaluating state-court rulings,
which demands that state-court decisions be given the benefit of the doubt' . . . .")
(citations omitted).

When the last state court to decide a federal claim explains its decision in a
reasoned opinion, a federal habeas court reviews the specific reasons as stated in the
opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct.
1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons
given by the state court and defers to those reasons if they are reasonable."). When
the relevant state-court decision is not accompanied with reasons for the decision,
the federal court "should 'look through' the unexplained decision to the last related
state-court decision that does provide a relevant rationale [and] presume that the
unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192.

In *per curiam* decisions without written opinions, the appellate court affirmed
Lopez's conviction, affirmed the denial of his Rule 3.850 motion, and rejected his
petition alleging ineffective assistance of appellate counsel. The appellate court's *per
curiam* decisions warrant deference under Section 2254(d)(1) because "the summary
nature of a state court's decision does not lessen the deference that it is due." *Wright
v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter*, 562 U.S. at 100
("When a federal claim has been presented to a state court and the state court has
denied relief, it may be presumed that the state court adjudicated the claim on the

merits in the absence of any indication or state-law procedural principles to the contrary."), *and Bishop v. Warden*, 726 F.3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court.

Lopez bears the burden of overcoming by clear and convincing evidence a state court's fact determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001).

## III. <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Lopez claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*,
>
> > First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. "[A] court deciding an

actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Lopez must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To meet this burden, Lopez must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Lopez cannot meet his burden by showing that the avenue chosen by counsel proved unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91.

The *Strickland* standard of review applies to a claim of ineffective assistance of appellate counsel. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To establish such a claim, Lopez must show both that appellate counsel performed deficiently

and that the deficient performance resulted in prejudice. To demonstrate deficient performance, Lopez must show that appellate counsel's failure to discover a non-frivolous issue and file a merits brief raising that issue fell outside the range of professionally acceptable performance. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). To demonstrate prejudice, Lopez must show that a reasonable probability exists that, but for appellate counsel's unreasonable failure to file a merits brief on a particular issue, Lopez would have prevailed on appeal. *Smith*, 528 U.S. at 285–86.

Sustaining a claim of ineffective assistance of counsel under Section 2254(d) is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. *See Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

In determining "reasonableness," Section 2254(d) authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry" and not independently assessing whether counsel's actions were reasonable. *Putman v. Head*, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001). The presumption of correctness and the highly deferential standard of review require that the analysis of each ground begin with the state court's analysis.

**Ground One:**

Lopez faults trial counsel for "arguing the wrong standard" when he moved for judgment of acquittal. (Doc. 2 at 2)  Ordinarily, a Florida court asks "whether the State presented competent, substantial evidence to support the [charge]." *Bush v. State*, 295 So. 3d 179, 200 (Fla. 2020).  At the time of trial, however, Florida law imposed a "special standard" for evaluating the sufficiency of the evidence in "circumstantial evidence cases." *Bush*, 295 So. 3d at 199.  This standard provided that "[w]here the only proof of guilt [was] circumstantial, no matter how strongly the evidence may suggest guilt, a conviction [could not] be sustained unless the evidence [was] inconsistent with any reasonable hypothesis of innocence." *Bush*, 295 So. 3d at 200.  Lopez argues that counsel should have cited the "circumstantial evidence standard" when he moved for judgment of acquittal.[2]  (Doc. 2 at 2)

The post-conviction court rejected this claim. (Respondent's Exhibit 28 at 11)  According to the court, "the circumstantial evidence standard applies only in cases where the State's evidence is wholly circumstantial and does not apply where there is direct and circumstantial evidence." (Respondent's Exhibit 28 at 10)  The court noted that Lopez's DNA "was found on the vaginal and anal swabs taken from the victim, constituting direct evidence of the sexual battery." (Respondent's Exhibit 28 at 10)  Therefore, "the heightened [judgment-of-acquittal] standard would not have

---

[2] After Lopez's trial, the Florida Supreme Court abandoned the special circumstantial evidence standard.  The Court described the standard as "unwarranted, confusing, and out of sync with both the jury instructions currently used in this state and the approach to appellate review used by the vast majority of the courts in this country." *Bush*, 295 So. 3d at 199.

been applicable." (Respondent's Exhibit 28 at 10)  Because "the circumstantial evidence standard . . . did not apply," counsel was not deficient for relying on the ordinary standard when he moved for judgment of acquittal. (Respondent's Exhibit 28 at 11)

This ruling was reasonable. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017).  The post-conviction court found that counsel was not deficient because Florida's circumstantial evidence standard did not apply. (Respondent's Exhibit 28 at 11) "The application of Florida's circumstantial evidence standard involves an underlying question of state law." *Devers-Division v. Sec'y, Dep't of Corr.*, No. 8:14-cv-388-KKM-JSS, 2021 WL 2581609, at *7 (M.D. Fla. June 23, 2021).  Therefore, the post-conviction court "already has told us how the issue[ ] would have been resolved under Florida state law had [counsel] done what [Lopez] argues he should have done." *Herring v. Sec'y Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005).

Because the post-conviction court "authoritatively decided as a matter of [Florida] law" that the circumstantial evidence standard did not apply, the remainder of the analysis is straightforward. *Calhoun v. Warden, Baldwin State Prison*, 92 F.4th 1338, 1351 (11th Cir. 2024).  "A lawyer cannot be deficient for failing to raise a meritless claim." *Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008).  As a

result, the post-conviction court reasonably concluded that counsel was not deficient for failing to rely on the circumstantial evidence standard.

**<u>Ground Two:</u>**

According to Lopez, appellate counsel should have argued that the trial court erred in denying his request for a curative instruction. (Doc. 2 at 3) The request was prompted by the testimony of Jeffrey Capra, the detective who interviewed Lopez. Capra spoke with Lopez on September 28, 2014. Later that day, Capra called Lopez's wife M.D. to schedule an interview. The interview took place on October 1. M.D. told Capra that she felt "[a]bnormal" before falling asleep on the night of the incident. (Respondent's Exhibit 6 at 380) At trial, Capra initially testified that *after* M.D. gave her statement, he told her that Lopez "had confessed to sexually battering [the victim] orally and also digitally." (Respondent's Exhibit 6 at 376-77) Capra later admitted that this timeline was incorrect. In fact, he had informed M.D. of Lopez's alleged confession on September 28, three days *before* her interview. (Respondent's Exhibit 6 at 392–93)

Defense counsel requested a curative instruction to clarify that M.D. learned of the alleged confession before she gave her statement to Capra. (Respondent's Exhibit 6 at 500–01) The court denied the request. (Respondent's Exhibit 6 at 507) During closing argument, the prosecution said, "I think it became clear that the detective had told the wife that [Lopez] confessed before the detective interviewed her. That's clear. I think that was made abundantly clear and that was shown to you." (Respondent's Exhibit 6 at 595)

In Lopez's view, appellate counsel should have argued that the court violated his "right to a fair trial" by "not granting the request for a curative instruction." (Doc. 2 at 7)  Without the instruction, the jury was allegedly left with the mistaken impression that M.D.'s statements "were not influenced by [Lopez's] initial 'confession.'" (Respondent's Exhibit 21 at 7)  The appellate court rejected this claim without explanation.  (Respondent's Exhibit 22)  Therefore, Lopez must "show[ ] there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.  "[I]f some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied." *Hill v. Humphrey*, 662 F.3d 1335, 1346 (11th Cir. 2011).

Lopez cannot meet his burden.  A fairminded jurist could conclude that the "omitted claim" had no "reasonable probability of success on appeal" because the denial of the curative instruction was harmless.  *Joiner v. United States*, 103 F.3d 961, 963 (11th Cir. 1997); *see also Boland v. Sec'y, Dep't of Corr.*, 278 F. App'x 876, 879 (11th Cir. 2008) (prejudice inquiry "requires that we determine whether the state court would have applied harmless error review").  With no reasonable probability of success on appeal, Lopez cannot show prejudice from the omission of his claim.

A Florida appellate court "will not reverse where an error is harmless." *Peret v. State*, 301 So. 3d 437, 439 (Fla. 2d DCA 2020).  The test for harmlessness is "whether there is a reasonable possibility that the error affected the verdict." *Butler v. State*, 493 So. 2d 451, 453 (Fla. 1986).  "Application of the [harmless error] test requires an examination of the entire record by the appellate court including a close

examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict." *Bullington v. State*, 311 So. 3d 102, 111 (Fla. 2d DCA 2020).

Lopez cannot show a "reasonable possibility" that the denial of the curative instruction "affected the verdict." *Butler*, 493 So. 2d at 453. At trial, Capra incorrectly stated that he told M.D. of Lopez's alleged confession *after* she gave her statement. Before he left the stand, however, Capra corrected the timeline. He testified that he informed M.D. of Lopez's alleged confession three days *before* her statement. The prosecution adopted the correct timeline during closing argument: "I think it became clear that the detective had told the wife that [Lopez] confessed before the detective interviewed her." (Respondent's Exhibit 6 at 595) Thus, Capra's misstatement was corrected before the jury retired to deliberate. Because the jury ultimately received the correct timeline, a curative instruction would not have "affected the verdict." *Butler*, 493 So. 2d at 453. Consequently, a fairminded jurist could conclude that appellate counsel was "not ineffective" for declining to raise an alleged "error [that] was harmless."[3] *Boland*, 278 F. App'x at 880.

---

[3] To the extent the application raises a freestanding claim based on the denial of the curative instruction, the claim fails because Lopez cannot show "more than a reasonable possibility that the [alleged] error contributed to the conviction." *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1114 (11th Cir. 2012).

**Ground Three:**

Lopez contends that trial counsel should have raised a *Giglio*[4] claim based on Capra's "false testimony" about when he told M.D. of Lopez's alleged confession. (Doc. 2 at 8) "[T]o succeed on a *Giglio* claim, a petitioner must prove (1) that the prosecut[or] used or failed to correct testimony that he knew or should have known was false and (2) materiality — that there is any reasonable likelihood the false testimony could have affected the judgment." *Rodriguez v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1277, 1302 (11th Cir. 2014).

The post-conviction court reasonably concluded that counsel did not provide ineffective assistance by failing to raise a *Giglio* claim. (Respondent's Exhibit 28 at 5) "A lawyer cannot be deficient for failing to raise a meritless claim." *Freeman*, 536 F.3d at 1233. Lopez's *Giglio* claim is meritless because he cannot show "any reasonable likelihood" that Capra's misstatement "could have affected the judgment." *Rodriguez*, 756 F.3d at 1302. As explained above, Capra mistakenly stated that he told M.D. of Lopez's alleged confession after she gave her statement. He later clarified that he informed M.D. of Lopez's alleged confession three days before her statement. In closing, the prosecution conceded "that the detective had told the wife that [Lopez] confessed before the detective interviewed her." (Respondent's Exhibit 6 at 595) Thus, as the post-conviction court explained, "the issue was promptly corrected when it arose[,] leaving no confusion in the jury's eyes

---

[4] *Giglio v. United States*, 405 U.S. 150 (1972).

as to the timeline." (Respondent's Exhibit 28 at 5) A *Giglio* violation cannot "occur when the truth comes out at trial and the prosecutor does not rely on the falsehood."[5] *Long v. Pfister*, 874 F.3d 544, 548 (7th Cir. 2017).

**Ground Four:**

Lopez faults trial counsel for failing to call Derrick and Eddie Valentine as witnesses at trial. (Doc. 2 at 9) According to Lopez, the Valentines were "present on the evening of the alleged events." (Doc. 2 at 9) They allegedly would have testified (1) that the victim was "continuously flirting with Lopez and . . . made multiple overt sexual advances toward him in their presence," (2) that they "did not witness Lopez give any Benadryl to the . . . victim," and (3) that "everyone was more intoxicated than usual." (Doc. 2 at 9) Lopez contends that the failure to call the Valentines "was extremely damaging to [his] defense." (Doc. 2 at 9)

The post-conviction court reasonably rejected this claim for lack of "prejudice." (Respondent's Exhibit 28 at 6) The burden of establishing prejudice under *Strickland* "is particularly heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness

---

[5] Lopez separately contends that a *Giglio* violation occurred when Capra testified that Lopez confessed during his interview. (Doc. 2 at 8) According to Lopez, "the recording of the interrogation . . . clearly showed that [he] never made any confession." (Doc. 2 at 8) But even assuming the statement was false, no *Giglio* violation occurred "because there was no undisclosed evidence." *Shuler v. Sec'y, Fla. Dep't of Corr.*, 610 F. App'x 856, 858 (11th Cir. 2015). Lopez had access to the recording that allegedly showed the falsity of Capra's statement. Therefore, nothing was withheld from the defense, and no *Giglio* violation occurred. *See Ford v. Hall*, 546 F.3d 1326, 1331 (11th Cir. 2008) ("*Giglio* error . . . occurs when the *undisclosed* evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury." (emphasis added)); *Rentas v. Fla. Att'y Gen. & Sec'y*, No. 2:15-cv-751-JES-MRM, 2017 WL 11637307, at *5 (M.D. Fla. July 27, 2017) ("Claim One fails at the outset because a *Giglio* analysis presupposes that the evidence at issue was withheld from the defense.").

would have testified to are largely speculative." *McKiver v. Sec'y, Fla. Dep't of Corr.*,

991 F.3d 1357, 1365 (11th Cir. 2021).  For that reason, "a petitioner's own assertions

about whether and how a witness would have testified are usually not enough to

establish prejudice from the failure to interview or call that witness." *McKiver*, 991

F.3d at 1365.  Lopez presents no evidence — through affidavits or otherwise — that

his proposed witnesses would have testified in the manner he suggests.  *See United*

*States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony

of a putative witness must generally be presented in the form of actual testimony by

the witness or an affidavit.  A defendant cannot simply state that the testimony

would have been favorable; self-serving speculation will not sustain an ineffective

assistance claim.").  "Without such a showing, [Lopez] cannot demonstrate

*Strickland* prejudice."  *Afshar v. Sec'y, Dep't of Corr.*, No. 2:24-cv-826-JES-NPM, 2025

WL 404629, at *5 (M.D. Fla. Feb. 5, 2025) (finding no prejudice from failure to call

witness because petitioner did not "offer[ ] [the witness's] sworn testimony detailing

what he would have said if deposed or called to testify at trial"); *see also Johnson v.*

*Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("[Petitioner] offers only speculation

that the missing witnesses would have been helpful.  This kind of speculation is

insufficient to carry the burden of a habeas corpus petitioner.").

**Grounds Five and Six:**

      Lopez argues that trial counsel provided ineffective assistance by failing to call

an expert witness "in the field of forensic and addiction psychiatry."  (Doc. 2 at 10)

Such an expert allegedly would have opined (1) that the victim was "in a blackout

state" "due to the alcohol [she] consumed," (2) that she "was completely conscious and fully functioning" while blacked out, and (3) that she "did not remember [what happened] because [of] her intoxication." (Doc. 2 at 11)  Also, Lopez contends that counsel should have retained an expert on "the effects of alcohol on a diabetic." (Doc. 2 at 12)  Such an expert allegedly would have testified that the victim, "as a diabetic, was simply experiencing the effects of alcohol" rather than the effects of Benadryl combined with alcohol.  (Doc. 2 at 12)

The post-conviction court reasonably rejected this claim for lack of prejudice. (Respondent's Exhibit 28 at 7–9)  Lopez never showed that any expert "had actually reviewed the evidence in his case" and would offer favorable testimony.  *Finch v. Sec'y, Dep't of Corr.*, 643 F. App'x 848, 852 (11th Cir. 2016).  "Without some specificity as to the proposed expert[s'] testimony, any assertion that [experts] would testify consistently with [Lopez's] claims [was] mere speculation and [did] not entitle him to [ ] relief."  *Finch*, 643 F. App'x at 852.  Thus, the post-conviction court reasonably concluded that Lopez's allegations were insufficient to establish prejudice.  *See, e.g.*, *Holt v. Sec'y, Fla. Dep't of Corr.*, 489 F. App'x 336, 338 (11th Cir. 2012) (state court reasonably rejected ineffective assistance claim based on failure to retain expert because "[i]t [was] speculative that an expert witness would in fact have testified" favorably to the defense); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is not enough to establish prejudice."); *Davis v. Craig*, 66 F.3d 319, 319 (5th Cir. 1995) (habeas petitioner must "demonstrate, by affidavits or otherwise, not only that the un-called forensic expert

would have expressed an opinion in her favor but also that the expert would have

been available to testify at trial").

**Ground Seven:**

Lopez faults trial counsel for failing to "inform the jury" that he allegedly

agreed to provide a buccal swab during his interview with detective Jeffrey Capra.

(Doc. 1 at 11)  The jury viewed a recording of the interview.  Lopez initially

proposed that Capra swab his beard.  (Respondent's Exhibit 6 at 358)  But when

Capra asked to take a "buccal swab inside of your mouth," Lopez refused.

(Respondent's Exhibit 6 at 363–64)  Soon after, Lopez changed his mind and said, "I

have nothing to hide.  So bring it."  (Respondent's Exhibit 6 at 366)  When Capra

prepared to take the buccal swab, however, Lopez said, "No, dude. . . . You're

gonna f*cking bury me.  You're gonna try to f*cking put me in jail for no reason."

(Respondent's Exhibit 6 at 367)  The interview ended and Lopez was taken into

custody.  (Respondent's Exhibit 6 at 368)  Capra testified at trial that Lopez never

"request[ed] [Capra] to come back and have his buccal swab taken."  (Respondent's

Exhibit 6 at 368)  The prosecution ultimately moved to compel Lopez to "submit a

buccal swab."  (Respondent's Exhibit 4)  The trial court granted the motion.

(Respondent's Exhibit 1 at 1)

Lopez contends that counsel should have objected to the prosecution's

"manipulat[ion]" of the interview.  (Doc. 2 at 14)  According to Lopez, the

prosecution omitted "the portion where [he] initiated the request for a swab" and

"several portions where he agreed to [a swab]."  (Doc. 2 at 14)  Also, the prosecution

- 20 -

allegedly omitted "the end of the interview where Lopez gave his final decision — he

consented." (Doc. 2 at 14)  Lopez contends that counsel's failure to object left the

jury with the "incorrect impression that [he] was being deceitful and uncooperative."

(Doc. 2 at 14)

> The post-conviction court found that this claim was "without merit."

(Respondent's Exhibit 28 at 11)  According to the court, counsel was not "deficient"

for failing to object because the "record [was] clear that while [Lopez] at times

agreed to the buccal swab, he ultimately refused and the State was forced to get a

court order for the buccal swab." (Respondent's Exhibit 28 at 11–12)  Thus, counsel

had no basis to argue that the prosecution used "underhanded maneuvers" to

"lead[ ] the jury to believe [Lopez] did not want to provide buccal swabs."

(Respondent's Exhibit 28 at 11)

> This ruling was reasonable.  Contrary to Lopez's assertion, the jury heard the

portions of the interview in which Lopez asked Capra to swab his beard and agreed

to a buccal swab.  (Respondent's Exhibit 6 at 358, 366)  Lopez alleges that at the

"end of the interview," he "gave his final decision — he consented." (Doc. 2 at 14)

But Lopez cites no evidence to support this assertion.  In fact, when Capra prepared

to take the buccal swab at the end of the interview, Lopez said, "No, dude. . . .

You're gonna f*cking bury me.  You're gonna try to f*cking put me in jail for no

reason." (Respondent's Exhibit 6 at 367)  Moreover, Capra testified that Lopez

never "request[ed] [Capra] to come back and have his buccal swab taken."

(Respondent's Exhibit 6 at 368)  Finally, the prosecution moved to compel Lopez to

submit a buccal swab — a request that would not have been necessary if he had

consented at the end of the interview.  As the post-conviction court noted, "while

[Lopez] at times agreed to the buccal swab, he ultimately refused."  (Respondent's

Exhibit 28 at 11)

In short, a reasonable jurist could conclude that counsel had no basis to argue

that the prosecution "manipulated the evidence to mislead the jury."[6]  (Doc. 2 at 14)

**Ground Eight:**

Lastly, Lopez faults trial counsel for failing to object to "improper comments

made by the State in . . . opening and closing arguments."  (Doc. 2 at 15)  "To find

prosecutorial misconduct, a two-pronged test must be met:  (1) the remarks must be

improper, and (2) the remarks must prejudicially affect the substantial rights of the

defendant."  *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991).  "A

prosecutor's remarks, suggestions, insinuations, and assertions are improper when

they are calculated to mislead or inflame the jury's passions."  *United States v. Azmat*,

805 F.3d 1018, 1044 (11th Cir. 2015).  "Substantial rights are prejudiced when there

is a reasonable probability . . . that, but for the remarks, the outcome of the trial

would have been different."  *United States v. Nerey*, 877 F.3d 956, 970 (11th Cir.

2017).

---

[6] Even if Lopez had ultimately consented to a buccal swab, he cannot show that the presentation of this fact would have created a "reasonable probability" of a different outcome at trial.  *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014).  The jury still would have learned that Lopez was reluctant to provide a DNA sample.  Regardless, Lopez's hesitancy was not an important part of the prosecution's case.  *See Strickland*, 466 U.S. at 695–96 ("Some [alleged] errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.").

The post-conviction court reasonably concluded that counsel was not deficient for failing to object. (Respondent's Exhibit 28 at 12–14) First, Lopez contends that the prosecution "lied to the jury in opening" by claiming that he "admitted to [the] rape." (Doc. 2 at 15) In fact, the prosecution correctly noted that Lopez "call[ed] the police on himself saying that he raped someone." (Respondent's Exhibit 6 at 190; *see also* Respondent's Exhibit 6 at 269) Immediately afterward, the prosecution conceded that during his interview with law enforcement, Lopez "talk[ed] about . . . a consensual encounter." (Respondent's Exhibit 6 at 191) Because the prosecution did not misstate the facts, counsel had no basis to object. Regardless, counsel adequately addressed the issue of Lopez's alleged confession in opening: "The government during this trial is going to want you to believe that David Lopez confessed to sexual battery. . . . But that's not true." (Respondent's Exhibit 6 at 192)

Second, Lopez claims that the prosecution "called [him] a liar" in closing. (Doc. 2 at 15) As the post-conviction court explained, the prosecution "never called [Lopez] a liar during closing argument." (Respondent's Exhibit 28 at 13) Instead, the prosecution argued that Lopez was "misleading" during his interview with law enforcement. (Respondent's Exhibit 6 at 534) That was a fair inference from the evidence. For example, Lopez claimed during the interview that he digitally penetrated the victim's vagina and performed oral sex on her. But he never mentioned vaginal or anal sex — a notable omission given that his sperm was found in the victim's vagina and anus. Likewise, Lopez initially claimed that the victim got

up, walked to his side of the bed, and began "kissing on [him]."  (Respondent's

Exhibit 6 at 351)  He later changed his story and said that he woke up with the victim

"on top of [him]."  (Respondent's Exhibit 6 at 358)  The prosecution did not commit

misconduct by describing Lopez's statements as misleading.[7]  *See United States v.*

*Schmitz*, 634 F.3d 1247, 1270 (11th Cir. 2011) ("We have no doubt that there are

some cases where a prosecutor is justified in arguing during closing arguments that a

particular witness is lying, if that is an inference supported by the evidence at trial.").

Third, Lopez argues that the prosecution "improperly bolstered the testimony

of the . . . victim by telling the jury that she was honest and straightforward and . . .

had no reason to lie."  (Doc. 2 at 15)  Specifically, the prosecution said, "She told

you what happened to her . . . the best that she could recall.  She told you, and she

was honest and straightforward from the stand.  You get to judge her credibility,

whether or not — if you believe she was misleading you, intentionally lying, you can

consider that."  (Respondent's Exhibit 6 at 531)  Also, the prosecution claimed that

the victim had "absolutely no reason, no motive to mislead or lie to you" because

she "was risking her friendship" with M.D. by accusing Lopez of rape.

(Respondent's Exhibit 6 at 597–98)

---

[7] Lopez complains that the prosecution "sarcastically commented on the tape of his
interview" and "claimed that any pauses in [his] statements were him thinking of what to say."
(Doc. 2 at 15)  But the prosecution was not limited to "flat, robotic recitations of 'just the facts.'"
*Diaz v. State*, 797 So. 2d 1286, 1287 (Fla. 4th DCA 2001).  To the contrary, closing argument "is a
time for robust [and] vigorous challenging . . . of an opponent's ideas."  *Diaz*, 797 So. 2d at 1287.
The challenged remarks were "no more than comments on the evidence that the prosecut[ion] was
entitled to make."  *State v. Smith*, 109 So. 3d 1204, 1206 (Fla. 5th DCA 2013).

These remarks were not improper.  The prosecution may not "attempt to bolster the credibility of a witness based on the government's reputation or through alluding to evidence not admitted at trial."  *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009).  "To determine if the government improperly vouched for a witness, the court must decide whether a jury could reasonably believe that the prosecutor was indicating a personal belief in the witness'[s] credibility."  *Lopez*, 590 F.3d at 1256.  "This prohibition against vouching does not, however, forbid prosecutors from arguing credibility; rather, it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury."  *Lopez*, 590 F.3d at 1256.

The challenged remarks did not "amount to an explicit, personal guarantee of credibility, such as assuring the jury that the prosecution would not have brought the case unless the defendant was actually guilty."  *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991).  Instead, the remarks invited the jury to find the victim credible "based on her behavior on the stand and the evidence admitted."  *United States v. Hope*, 608 F. App'x 831, 841 (11th Cir. 2015).  "[A]n attorney is allowed to argue . . . credibility of witnesses or any other relevant issue so long as the argument is based on the evidence."  *Miller v. State*, 926 So. 2d 1243, 1254–55 (Fla. 2006).

Because the prosecution engaged in no misconduct, the post-conviction court reasonably concluded that counsel was not deficient for failing to object.[8]  *See Denson*

---

[8] In closing, the prosecution said that during the 911 call, Lopez "never used th[e] words, but I didn't rape her."  (Respondent's Exhibit 6 at 583)  Contrary to Lopez's assertion, the prosecution's statement was correct.  (Respondent's Exhibit 6 at 268–71)

*v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) ("Failing to make a meritless

objection does not constitute deficient performance.").

## IV. CONCLUSION

Lopez's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The

clerk must enter a judgment against Lopez and **CLOSE** this case.

### CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Because Lopez fails to demonstrate either a substantial showing of the denial

of a constitutional right or that reasonable jurists would debate the merits of the

grounds, a certificate of appealability and leave to appeal *in forma pauperis* are

**DENIED**. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

Lopez must obtain permission from the court of appeals to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on December 23, 2025.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE